## Wytheville.

## THE AMERICAN AGRICULTURAL CHEMICAL COMPANY v. J. W. PERRY COMPANY.

June 13, 1929.

The opinion states the case.

*Savage and Lawrence*, for the plaintiff in error.

*Williams, Loyall and Taylor*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

The American Agricultural Chemical Company sells fertilizer and maintains an office at Norfolk. The J. W. Perry Company does business in that city also

as factor and commission merchant. J. T. Nicholls, now dead, was and had been for thirty or forty years a substantial merchant at Windsor, North Carolina. Towards the end of his career he became insolvent and died in December, 1926. In the spring of 1926, the Chemical Company consigned to Nicholls fertilizer under a contract which had been in force for the two preceding years. That contract, among other things, provided that Nicholls unconditionally guaranteed all accounts and notes representing proceeds of its sale; as additional security and as further evidence of his guaranty, he was required to execute his negotiable promissory note or notes therefor. Debts so contracted were to become and remain the property of the Chemical Company. The account between these parties was at all times to be kept separate and apart from all other business Nicholls might have. Pursuant to this, Nicholls sold to various farmers and transferred and assigned to the Chemical Company sixteen crop liens. On August 5, 1926, they were reassigned to him for collection. When reassigned he gave this receipt:

"I hereby certify that the above notes represent sale of fertilizer shipped me (us) by the American Agricultural Chemical Company and that I (we) hold these evidences of indebtedness in trust for collection in cash for the account of said company and agree to remit the proceeds immediately as collected to the Norfolk sales office of the said company."

Afterwards these sixteen debtors delivered to him twenty-four bales of cotton. They were shipped to the Perry Company and sold for $1,364.67 net, and this sum so realized was credited by that company on Nicholls' account. The Perry Company had done business with him for thirty or forty years. At the commencement of a year it would agree to extend a

certain credit; that for 1926 was not to exceed $15,000.00. As his necessities required, he would draw on Perry, and to meet drafts would forward cotton. The drafts, however, did not always exactly cover the particular shipment of cotton forwarded to protect them, and it was not necessary that they should because of a general extension of credit to the amount noted.

Nicholls did ship to the Perry Company, during 1926, 402 bales and at the end of the year was still indebted to it. The substance of this is that these 402 bales, including the twenty-four bales in litigation, were purchased by the Perry Company and the proceeds of sale credited on Nicholls' account, all in the ordinary course of trade.

Crop liens taken are authorized by section 2480 of the Consolidated Statutes of North Carolina, and cover crops made during the year upon the land in cultivation for which advances had been extended. It does not appear from the record that the cotton in controversy grew upon any particular land or farm, but it was delivered by these lien creditors and so we will assume that it was covered by these liens.

This statutory lien did not, as against the Perry Company, follow the cotton into Virginia, for it was never recorded here. Virginia Code, 1919, section 5197. A statutory prerequisite where the interest of purchasers for value without notice is involved. This, however, as we shall hereafter see, is not a matter of prime importance. The Chemical Company claims more than the benefit of the lien. It claims absolute title to the cotton and contends that it was delivered to and held by Nicholls in trust for its benefit, and many cases are cited to support the proposition that goods so sold may be followed wherever found and

whether held by an innocent purchaser or not. A discussion of this rule would be unfruitful because it does not apply to the facts in this case.

Nicholls was directed to collect these notes, and to enable him to do so, and as a lever against these debtors, their crop liens were reassigned to him. So reassigned, he had the undoubted right to enforce them, but when this was necessary he was to remit to the vendor, not commodities taken, but money due. Certainly had he gone through the processes of law, the purchasers of this cotton would have acquired good title. How is the situation changed because the farmer, in substance, said: "I will bring to you, voluntarily, the cotton itself; you need not go to the court for relief." This is what was done. Nicholls was not expected to forward the cotton to the Chemical Company and had never in a single instance, during the three years in which he had represented it, done so. It would doubtless have been vastly surprised if a dray loaded with this cotton had turned up at its door, and in all human probability would have reminded Nicholls that it was to be paid in cash and not in cotton, and that such was his contract. He could not pay in cash unless he sold the cotton, and so we, of necessity, reach the conclusion that he had authority to sell, a conclusion fortified by an unbroken course of dealing through all the years of his agency.

Suppose cotton had been delivered to Nicholls, and it is to be remembered that plaintiffs claim that the situation would not have been changed even though no lien had ever been executed, he would have had no authority to accept it at a valuation which would have bound his principal. Since he could not give for cotton delivered any particular credit, and since he could not send on the cotton itself, he had to sell it or face an impossiblesituation. A cash credit given for

cotton delivered would on a falling market have been promptly repudiated and Nicholls would have had to make good the deficiency.

The truth is that this company held Nicholls' direct obligation, and since he was regarded as solvent, looked primarily to him for payment. He was to deal with these liens as best he could, but he was to remit in money.

Our conclusion is that he had authority to sell, and that his purchaser took good title. It chances that it had no actual knowledge of the situation, but its rights would not have been diminished had it known every fact disclosed by this record. This is a common law action brought to collect, from Perry & Company, the value of the twenty-four bales of cotton sent on to it by Nicholls, the net proceeds of which, as we have seen, was $1,364.67.

At the trial a jury was empaneled but was discharged by consent before verdict and the entire case submitted to the judge for decision. He was of opinion that the plaintiff had no case and his judgment is plainly right. It must be affirmed, and it is so ordered.

*Affirmed.*